Shippen J.
I am clearly of opinion, that the word ‘1 issue, ’ ’ in the will of Sarah Parrock, must be construed a word of limitation, in order to effectuaté the. intention of the testator, to let in the issue by succession, which cannot be done unless the estate given to the father be construed an estate tail.
It has been qestioned, whether as John Parrock had the right of suffering a common recovery, when the estate came into the hands of the commonwealth by forfeiture, it did not come with that right annexed to' it, so as to vest an absolute fee simple in the state? Or whether only such an estate as was liable to be divested by him in remainder, after a failure of issue of John Parrock ?
No cases appear to shew that a vested remainder can be forfeited by the attainder of the tenant in tail; but on the *04-11 contrary, *many authorities have been cited by the J plaintiff’s counsel, which prove that the king shall hold the forfeited estate only, while the issue in tail remain.
But by the express words of the act of assembly of 1778, only such lands and estates as the persons attainted shall have been possessed of, interested in, or entitled unto, on the 4th July 1776, or at any time afterwards,-in their own right, or to their use, or whereof any other person or persons shall have been possessed of, interested' in, or entitled unto, to the use of, or in trust for them, according to the respective estates and interests, which the persons attainted, or any in trust for them shall have had therein, or might forfeit by such attainder, stand and be forfeited to the state without any office found, &c.
And by the subsequent act of 1779, there is an express provision, that nothing in this act shall be construed to extend, so as to debar or prevent any person or persons, other than such as claim under any attainted traitor, from pursuing his or her action or actions in any court of record, in the usual way, for the trial of his or her title to any lands seized as the estate of any such traitor.
The first act forfeits only such estates as the traitor had in his own right, or for his own use, according to the respective interests which the attainted persons had therein: the second act expressly saves the rights of all other persons who do not claim under the attainted traitor. The traitor can only forfeit his own right and estate, and not the rights and estates of others.
The case lastly, has been taken up on another ground, viz. that the remainder in this case is contingent, which is de *341 stroyed by the forfeiture of the particular estate on which it depended.
The contingency is, that Abel James, his heirs or assigns, are to have the remainder, on condition that he or they should pay to the managers of the Pennsylvania Hospital the sum of 300I., in three months after the decease of the tenant in tail.
There is an express authority given to the contributors óf the hospital to recover the 300I., which manifests an intension in the testator, that it should rather be considered a charge on the real estate, than a condition to prevent its vesting in Abel James. To construe' it a contingent remainder, would clash with the very words of the will, which expressly directs the payment to be made after the death of John Par-rock, whereas a contingent remainder must vest, during the continuance of the particular estate, or eo instanti that it determine.
The result of my opinion therefore is with the plaintiff.
Yeates J.
I fully conciir with my brethren, that John Par*rock, under the words of the will stated, took an estate tail. The general manifest intention of the tes- *- trix clearly was, that the real estate should not go over to Abel James, but upon a failure of issue of her brother. Her design of giving him an estate for life, is legally incompatible with her weightier intention, that her brother’s issue should inherit after his death; for if John Parrock had only taken an estate for life, his issue could never have taken: and although it eventually happened that he had no children, yet we must consider this case as if the fact had been otherwise. 2 Wils. 323. There are many determinations which warrant the court to give that effect to the will, which will best answer the devisor’s general intention, though by so doing we may defeat some particular intention. Besides the cases mentioned by the chief justice, and those cited in Dall. 48, vide 8 Vin. Abr. 233. Cowp. 411. 1 Vent. 214. 2 Lev. 58. 3 KLeb. 42. 1 Wins. 371, 399, 624. Gilb. Eq. Rep. 149.
It also strikes me strongly, that if John Parrock had sons or daughters who could have inherited this property, they would have taken it also in tail. The limitation is “to his “lawful issue; but in case of my said brother’s departing this “life without such issue, or they dying under the .age of “twenty-one years and without lawful issue, then the remain“der over to Abel James, his heirs and assigns.” Whatever were the intentions of the testatrix in fact, she has made use of proper technical expressions, to convey an estate in fee tail to her brother’s children.’ She uses the words ‘ ‘ issue, ” “such “issue dying without issue,” and “heirs and assigns;” and we are bound to say (in the language of Judge Buller, 3 Term Rep. 493) that “she understood the meaning of each, and we “cannot substitute one for the other, unless by unavoidable *342 “and necessary construction, in order to make sense of the “will.” Rut no such necessity exists in this case. Vide Eit. Rep- 345-
The estate and interest of John Parrock in the premises was forfeited to the commonwealth by his attainder of high treason. The forfeiture operated as long as the issue in tail should continue, but no longer, according to the cases cited by plaintiff’s counsel. The estate and interest of the traitor only is forfeited by the act of 6th Marbh 1778; and by the supplement thereto it is expressly declared, § 8, that ‘ ‘ this act ‘ ‘ shall not prevent others, than such as claim under any at-1 ‘ tainted or convicted traitor, from pursuing their actions in ‘ ‘ any court of record. ’ ’
The only question which remains to be considered is, whether the remainder limited to Abel James in fee simple, is a contingent remainder (technically speaking) or vested, if *3431 it is the * former, the particular estate of John Parrock •J being determined by his attainder, the contingent remainder is destroyed, and the commonwealth shall have the fee, discharged of all remainders, according to Palmer’s case. Noy, 102. For the remainder cannot vest, where the particular estate is destroyed before the contingency happens, whereby the remainder becomes vested. 1 Co. 66, 1-35. But if the remainder to Abel James was vested, then it is otherwise.
A passage from Eearne, 3d ed. 149, 4th ed. 328, has already been cited by the chief justice. The same author, 4th ed. 330, adds, “ Wherever the preceding estate is limited so as to ‘ ‘ determine on an event which certainly must happen, and ‘ ‘ the remainder is so limited 'to a person in esse and ascertained, that the preceding estate may by any means deter- “ mine before the expiration of the estate limited in remainder, such remainder is vested.” To the same effect are the sentiments of Ford Chief Justice Willes, in the case of Smith on the demise of Dormer v. Packhurst et al. in the house of lords. ^Atky. 138, 139.
It is said by Justice Buller, 3 Term Rep. 494, that “courts “of law always lean in favour of vesting estates;” and by Rider Chief' Justice, “It is a known rule of law, that where “particular estates of freehold are limited, with particular ‘ ‘ contingent remainders over to persons not in being, and ‘ ‘ then comes a remainder over in fee to one in being, that is “a vested remainder, until the intermediate remainders come “ in esse, and then it opens to let them in.” 3 Wils. 246.
A limitation to one for life, remainder to his first and other sons in tail not then in being (which is contingent) with remainder to one in esse, the last remainder is vested, notwithstanding the intervention of the estates tail. 3 Wils'. 247, 248.
A vested remainder may be well limited after an estate tail, whether the estate tail be vested or contingent. 1 Ford Ray, *343 209. 1 Salk. 224. Lit. Rep. 347. 3 Term Rep. 488 (note a.) Ives v. Legge.
Explained in Lyle v. Richards, 9 S. & R., 344, where the court said: “The attainder in Evans v. Davis operated only on the individual interest of the person attainted, and if his estate had been annihilated, there would have been nothing in the commonwealth to prevent the person having the next vested remainder, from immediately entering. ’ ’
Evans v. Davis was criticised by Gibson, J., who said that even on common law principles he would have come to a different conclusion. Lyle v. Richards, 9 S. & R., 344.
Referred to in 21 Pa., 348.
Cited in 77 Pa., 284, as an illustration of a vested remainder.
MEMORANDUM.
The honorable William Bradford, esq. resigned his commission as one of the justices of the Supreme Court the last day of this term, and was appointed attorney general of the United States.
The honorable Thomas Smith, esq. was appointed to succeed him, and his commission quamdm se bene gesserit, dated the 31st January 1794, was published in open court on the 7th April 1794.
But after a contingent fee is limited, no subsequent limitation can be vested. 10 Co. 85. 3 Sid. 47. 1 Rev. n. Pearne, 3d ed. 160, 161, 276, 277, 294, 295.
Under the authority of these cases, my mind is satisfied that the remainder limited to Abel James was a vested remainder. The intention of the testatrix is clearly expressed, that the death of John Parrock should precede the payment of the 300I. charged on the lands, and devised to the ‘managers of the Pennsylvania Hospital, and consequently this construction is most agreeable to such intention.
*1 am therefore clearly of opinion, as the executors and assignees of Abel James have, since the death of the said Abel, paid the 300I. to that institution, that the plaintiff is well entitled to a recovery of the premises.
Absente, Bradford J.; but he concurred in opinion with the other members of the court.
Judgment for the plaintiff.